STEPHEN T. O'NEILL (115132)
ROBERT A. FRANKLIN (091653)
MURRAY & MURRAY
A Professional Corporation
19400 Stevens Creek Blvd., Suite 200
Cupertino, CA 95014-2548
Telephone: (650) 852-9000; (408) 907-9200
Facsimile: (650) 852-9244
Email: soneill@murraylaw.com
Email: rfranklin@murraylaw.com

Attorneys Specially Appearing for Defendant
Fresh 'N Healthy, Inc.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| ASA FARMS, INC., a California corporation and BRAGA RANCH,<br><br>Plaintiff(s).<br><br>v.<br><br>FRESH 'N HEALTHY, INC., a Delaware corporation, MARK WILLIAMS, an individual; JACK PARSON, an individual; STEVEN CINELLI, an individual; CHAD HAGEN, an individual, SANTOS MARTINEZ, an individual; DON BEAM, an individual; DARRYL NICHOLSON, an individual; RICHARD MAY, an individual; THOMAS COLOGNA, an individual; PRESTWICK PARTNERS, LLC, a California limited liability company; SOLSTICE VENTURE PARTNERS, LLC, a business entity form unknown; VFINANCE INVESTMENTS, a business entity form unknown; FMP VINEYARD, LLC, a New Mexico limited liability company; BUTTONWOOD OPTION, LLC, a business entity form unknown; DW, LLC, a business entity form unknown; M SOLAZZO TRUST 2002; P. SOLAZZO 1998; GIBBONS FAMILY TRUST; BIXLER TRUST; STEIGERWALD TRUST and CARTER TRUST, and DOES 1 through 50, inclusive,<br><br>Defendant(s). | Case No. C08-00122 PVT<br><br>**DECLARATION OF RUSSELL K. BURBANK IN SUPPORT OF RESPONSE TO OBJECTION TO STIPULATION MODIFYING PRELIMINARY INJUNCTION** |

I, RUSSELL K. BURBANK, declare:

1. I am a partner in BURR, PILGER & MAYER, LLP ("BPM") and am authorized to make this declaration by the Defendant Fresh 'N Healthy, Inc., (the "Defendant") on its behalf in response to the OBJECTION TO THE STIPULATION MODIFYING PRELIMINARY INJUNCTION filed by proposed plaintiff in intervention Oceano Packing Co., LLC. I have personal knowledge of the facts set forth in this declaration, except those stated on information and belief and as to those matters I believe them to be true. If called upon as a witness, I would and could competently testify as follows:

2. BPM was retained by the Defendant in connection with financial difficulties encountered by the Defendant and the resultant necessity to wind-down and close its business. BPM is an organization providing personal and business accounting, tax and other related professional services to its clients, including business consulting services. Of relevance here, BPM's business consulting services consist of business valuation, litigation consulting, bankruptcy, due diligence, liquidation, turn-around and equity development. BPM provides integrated services to maximize a company's liquidation value. I have over 30 years general business experience and over 20 years of corporate renewal and process improvement experience, serving a variety of public and private firms. I have also acted as financial advisor to institutions. I estimate that I have participated in overseeing and handling over 20 assignments involving liquidation of a company's assets to maximize the value for its creditors and owners.

3. I was retained by the Defendant on November 28, 2007 to advise the company of the potential of turnaround and failing that to assist in the liquidation of its assets for the benefit of creditors. Upon retention, BPM analyzed the company's financial status, including its debt structure and assets. Its major secured creditor was Comerica Bank ("Comerica"), to which the Defendant owed over $4,000,000 pursuant to a loan agreement. The debt was secured by a security agreement which was perfected by UCC-1 filing with the Secretary of the State.

4. The Defendant has numerous farming and produce processing packing equipment for use in its business. Due to its financial difficulties, the Defendant was forced to terminate its operations. In the process of winding down, the Defendant has returned several pieces of leased

equipment to the lessors, resulting in the dismantling of certain integrated processing equipment which necessarily affects negatively the value of that equipment. With Comerica's consent and cooperation, BPM initiated an extensive marketing effort with respect to the sale of the Defendant's remaining assets, including its processing equipment. In an effort to ensure that this equipment was sold at a fair value, BPM solicited eight (8) fresh produce processors who we believed were competitors of the Defendant and who we thought might have an interest in purchasing the equipment. Attached hereto and marked as Exhibit "A" and incorporated herein by reference is a true and correct copy of an exemplar solicitation letter in this regard. No serious response came from this mailing.

5. Separately, I contacted the sale vice president at Pacmac, Inc. in Fayeteville, Arkansas, a major manufacturer of produce packing equipment, and inquired if he knew of any processors who might have an interest in the Defendant's equipment. He referred me to a company in North Carolina that is building a frying plant. The manager of that company sent me a list of equipment that he was looking to buy, none of which was among the Defendant's equipment inventory.

6. We next solicited proposals from professional auctioneers to auction the equipment. Two competing proposals were received to auction the Defendant's equipment. One of the auctioneers, Ashman Company ("Ashman"), quoted a fixed price and assumed all of the risks of the auction to be held on the Defendant's site in Gilroy on March 11, 2008. The competing bidder, Martella Auction Co. Inc. ("Martella") declined to quote a fixed price auction although it believed the Defendant's equipment would sell for $600,000 at an auction if consolidated into an annually scheduled auction it holds in Tipton, California in February. Martella would not guarantee a fixed price, the proceeds from the sale would be net of certain costs to refurbish the equipment, would require a move of the equipment to Tipton. In addition to the processing equipment, the Defendant believes that it has ownership rights in certain irrigation pipes, but neither Ashman nor Martella were able to provide a quotation for irrigation pipe because of Defendant's inability to locate or account for the pipe it owns. In addition to the fixed price for the processing equipment, Ashman and Defendant will split the proceeds of pipe sold at auction 50/50. It is not known at this time how

1  much pipe will be sold at auction. Because Martella was not willing to meet the fixed price quote of
2  Ashman and due to the other factors of timing and location of the auction, the Defendant and
3  Comerica agreed that Ashman was the best offer. Attached as **Exhibits "B"** and **"C"** respectively
4  are copies of the bids received from Ashman and Martella.

5      7.    In a separate offer, the Defendant received an offer to purchase the equipment for
6  $350,000. Again, this proposal was rejected due to the more favorable Ashman quote.

7      8.    As to the sale of the "Gilroy Machine" and truck to Raymond Nava identified in the
8  stipulation, I am informed and believed that the Plaintiff's counsel, Kenneth Gorman, spoke to
9  Mr. Ashman who confirmed that $60,000 is a "fair value" for these assets.

10     9.    The Ashman auction is currently scheduled for March 11, 2008. Any delay of that
11 day will only add costs to sell what are largely farm tractors in various states of repair, older model
12 trucks and farm implements and customized processing equipment that has been partially dismantled
13 to accommodate the return of leased equipment. There is no recent appraisal of which I am aware
14 showing that this equipment in its present state is worth anything more than the auction estimates
15 provided by two experienced auction firms. Based on my experience, I believe that the sales to
16 Ashman and Nava represent the present fair market value for these assets.

17     I declare under penalty of perjury under the laws of the State of California, the foregoing is
18 true and correct and that this declaration is executed on March 4, 2008.

20                       /s/ *Russell K. Burbank*
                        RUSSELL K. BURBANK