1  Effie F. Anastassiou, Esq. (SBN 96279)
   Scott J. Allen (State Bar #178925)
2  Denis Klavdianos, Esq. (SBN 225925)
   ANASTASSIOU & ASSOCIATES
3  242 Capitol Street
   Post Office Box 2210
4  Salinas, California 93902
   Telephone: (831) 754-2501
5  Facsimile: (831) 754-0621

6  Attorneys for OCEANO PACKING COMPANY, LLC.

7

8              IN THE UNITED STATES DISTRICT COURT

9        FOR THE NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

10 ASA FARMS, INC., a California corporation and  ) Case No. C08-00122JF
   BRAGA RANCH                                   )
11                                               )
                                                 )
12               Plaintiffs,                     ) OCEANO PACKING COMPANY,
                                                 ) LLC'S REPLY IN FURTHER
13                                               ) OPPOSITION TO STIPULATION TO
                                                 ) MODIFY INJUNCTION
14           v.                                  )
                                                 ) Date:    March 14, 2008
15                                               ) Time:    9:30 a.m.
   FRESH 'N HEALTHY, INC., a Delaware            ) Judge Fogel
16 corporation, MARK WILLIAMS, an individual;    )
   JACK PARSON, an individual; STEVEN CINELLI,   )
17 an individual; CHAD HAGEN, an individual,     )
   SANTOS MARTINEZ, an individual; DON BEAM,     )
18 an individual; DARRYL NICHOLSON, an           )
   individual; RICHARD MAY, an individual;      )
19 THOMAS COLOGNA, an individual; PRESTWICK      )
   PARTNERS, LLC, a California limited liability )
20 company; SOLSTICE VENTURE PARTNERS,           )
   LLC, a business entity form unknown; VFINANCE )
21 INVESTMENTS, a business entity form unknown;  )
   FMP VINEYARD, LLC, a New Mexico limited       )
22 liability company; BUTTONWOOD OPTION,         )
   LLC, a business entity form unknown; DW, LLC, a )
23 business entity form unknown; M SOLAZZO       )
   TRUST 2002; P. SOLAZZO 1998; GIBBONS          )
24 FAMILY TRUST; BIXLER TRUST;                   )
   STEIGERWALD TRUST and CARTER TRUST,           )
25 COMERICA BANK and DOES 2 through 50,          )
   inclusive,                                    )
26                                               )
27               Defendants                      )
                                                 )
28 _____)

ASA v. Fresh 'N Healthy, Inc., et al.                    Reply Re: Objection to Stipulation
Case Number: C08-00122JF

| | |
|---|---|
| OCEANO PACKING COMPANY, LLC, a California limited liability company,<br><br>        Intervening Plaintiff,<br><br>v.<br><br>FRESH 'N HEALTHY, INC., a Delaware corporation, MARK WILLIAMS, an individual; JACK PARSON, an individual; STEVEN CINELLI, an individual; CHAD HAGEN, an individual, SANTOS MARTINEZ, an individual; DON BEAM, an individual; DARRYL NICHOLSON, an individual; RICHARD MAY, an individual; THOMAS COLOGNA, an individual; PRESTWICK PARTNERS, LLC, a California limited liability company; SOLSTICE VENTURE PARTNERS, LLC, a California limited liability company; VFINANCE INVESTMENTS, a business entity form unknown; FMP VINEYARD, LLC, a New Mexico limited liability company; BUTTONWOOD OPTION, LLC, a business entity form unknown; DW, LLC, a business entity form unknown; M SOLAZZO TRUST 2002; P. SOLAZZO 1998; GIBBONS FAMILY TRUST; BIXLER TRUST; STEIGERWALD TRUST; CARTER TRUST; and COMERICA BANK, a Texas Corporation,<br><br>        Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |

Plaintiff, Oceano Packing Company, LLC ("Oceano") submits this pleading in reply to the Defendant's Response to Objection to Stipulation to Modify Preliminary Injunction (the "Response") filed by Defendant Fresh 'N Healthy, Inc. ("Fresh").

## BACKGROUND

On February 27, 2008, at a time before Oceano was added as a party to this action, Oceano objected to the Stipulation to Modify Preliminary Injunction (Docket Number 27)(the "Stipulation"). The Stipulation sought to modify the Injunction[1] so as to authorize Fresh to sell certain assets of Fresh. Pursuant to the Stipulation, Fresh proposed to sell (1) "substantially all of the equipment . . . located in Gilroy and El Centro, California, and trade names and labels" to Ashman Company (an auctioneer) for

---

[1] The term "Injunction" refers to the Order Granting Plaintiff's Motion for Preliminary Injunction (Docket Number 19) filed by this Court on January 29, 2008.

| ASA v. Fresh 'N Healthy, Inc., et al. | | Reply Re: Objection to Stipulation |
|---|---|---|
| Case Number: C08-00122JF | 2 | |

$525,000; and (2) "substantially all of the equipment and vehicles located at Gilroy Machine" to Ray Nava for $60,000.

Fresh and Defendant Comerica Bank (Fresh's secured lender) ("Comerica") failed to notify Oceano about the Stipulation or the proposed sale of assets agreed to in the Stipulation. This is so despite the fact that Oceano notified both Fresh and Comerica of Oceano's claim under the Perishable Agricultural Commodities Act ("PACA") on January 16, 2008, several weeks before the Injunction was entered, and despite the fact that on February 8, 2008, Oceano requested that Fresh and Comerica notify Oceano if they intended to take, or agreed to take, any action inconsistent with the Injunction. Oceano did not learn about the existence of the Stipulation until February 27, 2008, and only learned of it by viewing the docket for this case on the Court's PACER service.

The Court signed the Stipulation on March 11, 2008, subject to certain conditions, including setting a hearing on March 14, 2008 with respect to Oceano's opposition to disposition of the sale proceeds authorized by the Stipulation.

On March 12, 2008, counsel for Fresh sent an e-mail to Oceano's counsel stating that Fresh sold certain assets pursuant to the Stipulation to Ashman Company on March 11, 2008 and received proceeds of $525,000 from the sale. [See supporting Declaration of Effie Anastassiou ("Anastassiou Decl."), at Exhibit (Ex.) B.] Fresh's counsel also disclosed that Fresh is planning to sell the remaining assets described in the Stipulation to Ray Nava, and expects to receive $60,000 from Mr. Nava.

The e-mail from Fresh's counsel also states that, after Ashman Company purchased its portion of the assets, Ashman Company held an auction and re-sold the assets. [See Anastassiou Decl., at Ex. B.] Fresh's counsel stated that he did not know the amount of money Ashman Company received from the re-sale of the assets or to whom Ashman Company sold the assets. [See Anastassiou Decl., at Ex. B.]

According to the March 12, 2008 e-mail from Fresh's counsel, now that the sale of the bulk of Fresh's assets has been completed, Fresh intends to file a Chapter 7 bankruptcy case within about one week. [See Anastassiou Decl., at Ex. B.]

## SUMMARY OF ARGUMENT

The sale of Fresh's assets, and/or the distribution of the proceeds from such sale of assets, pursuant

to the Stipulation should not be allowed. This is because Fresh has failed to meet its burden of proving that the assets to be sold are not the subject to the PACA trust.

Further, the evidence before this Court, including the deposition testimony of Stephen Cinelli, a founder and chairman of the Board of Directors of Fresh, shows that the sale price for the assets to be sold pursuant to the Stipulation is most likely far below fair market value. Selling the assets for below fair market value is likely to prejudice Oceano because there are other known and competing PACA claimants with claims against the assets of Fresh. The competing claims of PACA creditors, including Oceano, does in fact exceed the proposed purchase price to be realized by the sale of Fresh's assets. Thus, Oceano's ability to have its PACA claim promptly and fully paid is jeopardized by Fresh's failure to sell its assets for fair market value.

Finally, the evidence shows that Fresh, at the insistence of Comerica, has repeatedly paid its financial advisers and attorneys out of funds covered by the PACA trust, after Fresh closed its doors. In addition, Comerica has received loan payments and other payments from funds derived from the PACA trust and paid Comerica's counsel from such funds. Oceano hereby requests that the Court order Fresh and Comerica to immediately account for the source of funds and amount of funds used by Fresh to pay Fresh's financial advisers and attorneys, and used to pay Comerica and Comerica's counsel, and that Comerica deposit, for the benefit of the PACA creditors, any PACA funds wrongfully used.

## ARGUMENT

I.  **BACKGROUND ON THE PACA TRUST.**

The trust created by the Perishable Agricultural Commodities Act ("PACA") contains all inventories of food or other products derived from perishable commodities, and any receivables or proceeds from the sale of such commodities or products, which are to be preserved as a non-segregated floating trust, until full payment is made to the PACA creditors. See 7 U.S.C. § 499e(c)(2) and 7 C.F.R. § 46.46(c).

The establishment of this PACA trust occurs upon the commencement of the debtor's buying and selling of produce, and exists <u>continuously</u> throughout the life of the debtor's business, until all PACA creditors are paid in full. It does not matter whether the PACA trust beneficiary (here Oceano), or another

produce seller, was the source of the inventory or proceeds; the PACA trust applies continuously to all inventories and proceeds. No tracing of assets is required. See In re Kornblum & Co., Inc., 81 F.3d 280, 286 (2nd Cir. 1995); In re Atlantic Tropical Market Corp., 118 B.R. 139, 142 (Bankr. S.D. Fla 1990); In re Milton Poulos, Inc., supra; and Frio Ice, S.A. v. Sunfruit, Inc., 918 F.2d 154, 156 (11th Cir. 1990).

Further, if a debtor uses PACA trust assets to acquire or make payments on another asset (such as real estate or equipment), without maintenance of a reserve sufficient to satisfy all unpaid PACA creditors, such an action constitutes an unlawful dissipation of PACA trust assets, and the acquired asset then also becomes a part of the PACA trust. See In re Al Nagelberg & Co., 84 B.R. 19, 21-22 (Bankr. S.D. N.Y. 1988).

All of the assets of a PACA debtor are presumed to be subject to be subject to the PACA trust, no matter when the assets were purchased. The debtor bears the burden of proving that any particular assets are exempt from the PACA trust. The courts have also recognized that since "it is usually impossible for a PACA seller to trace the origin of disputed assets . . . the burden of tracing the source of funds [is] on the purchaser of agricultural commodities subject to PACA." Tony Vitrano Co. V. National Produce Co., Inc., 815 F. Supp. 23, 25 (D.C. 1993). In Tony Vitrano Co. the court found that real estate purchased by the debtor was subject to the PACA trust, since there was no competent evidence produced to show that no PACA trust money was used to make payments on the real estate. See also, Sanzone-Palmisano Co. V. Seaman Enterprises, 986 F.2d 1010, 1014 (6th Cir. 1993), "[a]ll of the seized assets that cannot be traced to a non-trust source are part of the [PACA] trust res."

In this Court's Order Granting Plaintiff's Motion for Preliminary Injunction (Docket Number 19)(the "Injunction"), this Court recognized that "**all** assets of Fresh" are presumed to be subject to the PACA trust (and the Court's Injunction) "unless Fresh can prove that a particular asset is not derived from perishable agricultural commodities[.]" Injunction at 2:11-13 (emphasis added).

## II. FRESH HAS PRODUCED NO EVIDENCE TO SHOW THAT THE ASSETS TO BE SOLD ARE NOT SUBJECT TO THE PACA TRUST.

As noted above, the burden of proving that any assets owned by Fresh are not subject to the PACA trust falls squarely on Fresh. The Court's Injunction was clear that all assets of Fresh were subject to the

Injunction unless Fresh could prove that any particular asset was not subject to the PACA trust.

Fresh has submitted no evidence whatsoever to meet its burden of showing that any of the assets it proposes to sell pursuant to the Stipulation are not subject to the PACA trust.

### III. THE EVIDENCE SHOWS THAT THE PROPOSED SALE PRICE IS LIKELY BELOW FAIR MARKET VALUE.

#### A. The Proposed Sale of Equipment And Machinery At Gilroy Machine Is Far Below Fair Market Value.

The Stipulation calls for the equipment and vehicles located at Gilroy Machine to be sold for $60,000.00 to a gentleman named Ray Nava. The evidence shows that the proposed $60,000.00 sale price is far below fair market value for those assets.

On March 11, 2008, Oceano's counsel took the deposition of Stephen Cinelli, one of the founders and the chairman of the Board of Directors of Fresh in connection with a state court action pending against Fresh. [See Anastassiou Decl, at ¶ 2.] Mr. Cinelli testified that the assets to be sold to Mr. Nava include two trucks, "one of which was new". [See Anastassiou Decl., at Ex. A, at Rough Draft at 137:15-16.] Mr. Cinelli also testified that the value of the two vehicles alone "amounted to at least $60,000 if not more[.]" [See Anastassiou Dec., at Ex. A, at Rough Draft at 136:22-23.] Mr. Cinelli also testified that the equipment proposed to be sold to Ray Nava has an appraised value of approximately $150,000 or $200,000. [See Anastassiou Decl., at Ex. A at Rough Draft at 136:25 through 137:1-3.]

Fresh has failed to submit any competent evidence to this Court which shows that the proposed sale price for the Gilroy Machine equipment and vehicles represents fair market value. The only evidence submitted by Fresh in this regard is a single paragraph in the declaration of Russell Burbank, a financial adviser who was hired by Comerica to assist in liquidating Fresh's assets, in which Mr. Burbank states:

> 8. As to the sale of the "Gilroy Machine" and truck to Raymond Nava identified in the stipulation, <u>I am informed and believed</u> that the Plaintiff's counsel, Kenneth Gorman, spoke to Mr. Ashman who confirmed that $60,000 is a "fair value" for these assets.

(emphasis added).

Thus, Mr. Burbank lacked personal knowledge[2] as to whether the $60,000.00 sale price represented

---

[2] In paragraph 1 of his declaration, Mr. Burbank states that he has "personal knowledge of the facts" stated in the declaration, "<u>except those stated on information and belief</u>[.]" (emphasis added).

fair market value for the Gilroy Machine equipment and vehicles. Instead, Mr. Burbank's declaration, as it relates to the sale price of the Gilroy Machine assets, simply contains hearsay statements regarding the value of the assets.

Overall, the evidence before the Court indicates that the proposed sale price, $60,000, for the equipment and vehicles at Gilroy Machine is far below fair market value.

### B. The Proposed Sale Price For The Assets To Be Sold To Ashman Company Is Also Most Likely to Be Far Below Fair Market Value.

The Stipulation also calls for the sale of "substantially all of the equipment, . . . located in Gilroy and El Centro, California, and trade names and labels" to Ashman Company, an auctioneer.

According to the recent testimony of Steve Cinelli, Fresh's chairman of the Board of Directors, the assets to be sold to Ashman Company constitute a large portion of the assets that were purchased by Fresh, within the last year, for a total of approximately $2.9 to $3.2 million. The assets to be sold to Ashman Company include:

(1) Assets purchased by Fresh in March of 2007 (only one year ago) from Santos Martinez, a current shareholder of Fresh, who conducted business as "Gourmet Veg-Paq." According to Cineli, the assets purchased from Mr. Martinez had a fair market value, at the time they were purchased in March of 2007, of about $2.3 to $2.6 million. Mr. Cinelli also testified that the fair market value price paid by Fresh for the assets was supported by an appraisal of the equipment performed in the fall of 2006. [See Anastassiou Decl., at Ex. A at Rough Draft at 108:24-24 through 109:1-24]. Mr. Cinelli did not have a copy of the appraisal with him during his deposition. [See Anastassiou Decl., at ¶ 3]

On March 12, 2008, at long last, after repeated requests, counsel for Fresh finally provided a copy of the appraisal of Fresh's equipment to Oceano.[3] The appraisal reveals that the total "fair market value" of the equipment purchased by Fresh from Martinez was $3.728 million, and that the total "orderly

---

[3] Oceano's counsel had requested a copy of the appraisal from counsel for Fresh on at least three occasions between February 27, 2008 and the present. [See Anastassiou Decl. at ¶ 6 and Ex. D]. Fresh's counsel flatly refused to provide the appraisal to counsel for Oceano prior to the sale of the assets that occurred on March 11, 2008. [See Anastassiou Decl. at ¶ 6 and Ex. D.] Fresh's refusal to share the appraisal with Oceano prior to the sale was clearly a deliberate attempt to keep Oceano from moving this Court to restrain the sale.

liquidation value" of the assets was $2.434 million. [See Anastassiou Decl., at Ex. C and Ex. E].

(2) Other assets purchased from persons other than Mr. Martinez between February and September of 2007 during the course of Fresh's business. The purchase price for those additional assets was approximately $600,000.00. [See Anastassiou Decl., at Ex. A at Rough Draft at 109:1-20.]

In sum, the evidence that Oceano has gathered indicates that the fair market value of the Fresh assets that are being sold to Ashman Company may well have been as high as $2.9 to $3.2 million at the time Fresh purchased the assets only one year ago, or less. In contrast, the evidence submitted by Fresh fails to adequately explain why the proposed price to be paid by Ashman Company for many of the same Fresh assets is so much lower than the fair market value only one year ago.

## IV. OCEANO, AND OTHER CREDITORS OF FRESH, ARE LIKELY TO BE HARMED BY THE SALE OF FRESH'S ASSETS BELOW FAIR MARKET VALUE.

Fresh halted its active business operations at the end of December of 2007. Thus, the proposed sale contemplated by the Stipulation is part of Fresh's final liquidation and winding up of the corporation.

The proposed sale will yield only approximately $585,000.00 for Fresh.

Fresh argues that Oceano will not be harmed by the sale because the total amount of PACA claims asserted by Oceano and the other plaintiffs in this case are less than $585,000.00.[4]

Fresh's argument fails to recognize that there are other PACA claimants with claims against Fresh. At least one other PACA suit (in addition to the two suits at issue in this action) has been filed in this Court – Dobler & Sons, LLC v. Fresh 'N Healthy, Case Number C08-00113 RS. The plaintiff in Dobler asserts a PACA claim for an unpaid balance of $335,466.76. See Dobler First Amended Complaint (Docket Number 3) at ¶ 8.[5] Thus, when the Dobler claim is combined with the claims asserted by Oceano and the other plaintiffs in this case, the claims against Fresh total **$745,565.75.** Other PACA claims may also be asserted against Fresh in the future. Thus, the aggregate total of PACA claims asserted against

---

[4]Oceano and the other plaintiffs in this case (ASA Farms and Braga Ranch) assert PACA claims totaling $420,098.99: (a) Oceano asserts a claim for $101,127.39; (b) ASA Farms asserts a claim for $302,756.84; and (c) Braga Ranch asserts a claim for $16,214.76.

[5]Oceano requests that the Court take judicial notice of the First Amended Complaint in the Dobler action pursuant to Fed.R.Evid. 201.

Fresh exceeds the $585,000.00 to be realized from the proposed sale.

Given the existence of additional, competing PACA claims, the proposed sale of Fresh's assets for less than fair market value is likely to prejudice Oceano's ability to fully collect on its PACA claim.

### V.  OCEANO REQUESTS AN ACCOUNTING FOR FUNDS USED TO PAY FRESH'S FINANCIAL ADVISER AND ITS ATTORNEYS, AND COMERICA AND ITS ATTORNEYS.

During his March 11, 2008 deposition, Steve Cinelli testified that Comerica Bank insisted that Fresh hire Russell Burbank and his accounting firm Burr, Pilger and Mayer ("BPM") in November of 2007 to serve as financial advisers to Fresh. [See Anastassiou Decl., at Ex. A at Rough Draft at 82:19-25, 83:1-25, and 84:1-11.] Comerica also insisted that Fresh retain Stephen O'Neill, a lawyer from the firm of Murray & Murray, to act as Fresh's counsel. Id.

According to Mr. Cinelli's deposition testimony, after Fresh closed its doors, Mr. Burbank and his firm BPM, and Mr. O'Neill and his firm Murray & Murray, have received fees paid out of Fresh's <u>produce receivables</u> that were assigned to Comerica in amounts which total close to $150,000. [See Anastassiou Decl., at Ex. A at Rough Draft at 103:12-20.[6] ] Comerica has had complete control over the produce receivable funds used to pay Fresh's financial advisers and attorneys. Id. In other words, Mr. Cinelli testified that Fresh's financial advisers and attorneys hired at Comerica's insistence have been paid out of funds that belong to the PACA trust. Further, Comerica, who had control over the payment of such fees, was aware at all times of the PACA claims asserted by Oceano and others when the payments were made to the financial advisers and attorneys. [See Anastassiou Decl., at Ex. A at Rough Draft at 103:21-24.] Further, if such payments have been made during the pendency of this Court's Injunction, such payments would violate the express terms of the Injunction, in addition to the requirements of PACA[7]

In addition, Mr. Cinelli testified that during the course of Fresh's short existence, Comerica

---

[6] Mr. Cinelli testified that, to date: (1) Russ Burbank and his accounting firm have been paid about $100,000; and (2) Stephen O'Neill and his law firm have been just under $50,000. [See Anastassiou Decl., at Ex. A at Rough Draft at 83:15-18, and at 84:4-6.

[7] See Injunction at 2:6-11 (enjoining Fresh and banking institutions from "dissipating [or] paying" PACA trust assets).

deducted all payments that Fresh made on its loan with Comerica, including principal payments, interest payments, late fees, and charges for Comerica's legal counsel, from Fresh's bank account containing PACA trust funds. [See Anastassiou Decl, at Ex. A at Rough Draft at 101:8-25, 102:1-25 and 103:1-10.]

Consequently, Oceano respectfully requests that Fresh and Comerica be ordered to account for the source of funds used to pay Fresh's financial advisers (Mr. Burbank and BPM) and Fresh's counsel (Mr. O'Neill and Murray & Murray). Further, Comerica bank has retained counsel to represent it in connection with Fresh's dissolution and liquidation. Oceano requests that Fresh and Comerica be ordered to disclose whether Comerica's counsel has been paid out of Fresh's accounts, and, if so, that Fresh and Comerica be ordered to account for the source of the funds used to pay Comerica's counsel. Further, Comerica should be required to account for the source of all funds it previously received on payments made to Comerica by Fresh with respect to its loan, including principal, interest, late fees and counsel charges. Once such an accounting is provided, this Court should order Comerica to deposit with this Court, for the benefit of Fresh's PACA creditors, all funds which were previously wrongfully paid to Comerica or to financial advisors or attorneys, in violation of this Court's Injunction or the requirements of PACA.

## CONCLUSION

For the foregoing reasons, the sale of Fresh's assets, and distribution of the proceeds of such sale, pursuant to the Stipulation should not be allowed. A duly noticed sale of Fresh's assets, in which all creditors of Fresh are provided due notice, including the PACA creditors, should instead be conducted.

Additionally, Oceano respectfully requests that the Court order Fresh and Comerica to account for the source of funds used by Fresh to pay Comerica, and the financial advisers and attorneys hired to represent Fresh and/or Comerica, and to make loan payments to Comerica. Finally, Comerica should be ordered to deposit with this Court, for the benefit of the PACA creditors, all funds that were so received by the above identified parties, in violation of this court's Injunction or the requirements of PACA.

Dated: March 12, 2008

ANASTASSIOU & ASSOCIATES

By: _____
Effie F. Anastassiou
Attorneys for Intervening Plaintiffs
OCEANO PACKING, CO., INC.

F:\OCA\Fresh 'N Healthy\Pleadings\Reply to Objection to Stip.wpd